IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LINDA HAGLUND,                              §
                                           §
       Plaintiff,                       §
                                           §
V.                                         §     CIVIL ACTION NO. H-12-1830
                                           §
ST. FRANCIS EPISCOPAL DAY SCHOOL,          §
                                           §
       Defendant.                       §

## MEMORANDUM AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pending in this case in which the parties have consented to proceed before the undersigned Magistrate Judge is Defendant's Motion for Summary Judgment (Document No. 24). Having considered the motion, Plaintiff's Response (Document No. 30), Defendant's Reply and Objections to Plaintiff's Summary Judgment Evidence (Document Nos. 32 & 33), Plaintiff's Response to Defendant's Objections (Document No. 34), the summary judgment evidence, and the applicable law, including *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), it is ORDERED, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 24) is GRANTED and Plaintiff's age discrimination claim under the Age Discrimination in Employment Act is DISMISSED.

## I.      Background

Plaintiff Linda Haglund is a teacher who has been employed by Defendant St. Francis Episcopal Day School, a private kindergarten through eighth grade school in Houston, Texas (referred to hereafter as "the School"), for 27 years. She has taught kindergarten through third grade,

with the last few years of her employment with the School teaching kindergarten.   Following a performance evaluation in the spring of 2011, Haglund was advised by letter dated May 6, 2011, that her contract for the following school year, 2011-2012, would not be renewed.   Haglund was 63 at the time.   She claims in this case that the non-renewal of her contract, referred to by her as her "termination," was based on her age, and has asserted a claim against the School for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1).

The School denies the non-renewal was based on Haglund's age, and has filed a Motion for Summary Judgment.   In that motion, the School argues that Haglund has no direct evidence of age discrimination, and no summary judgment evidence that raises a genuine issue of material fact on the circumstantial evidence method of proving age discrimination.   In particular, the School argues that: (1) it listed several reasons in the letter dated May 6, 2011, for its decision not to renew Haglund's contract for the 2011-2012 school year; (2) each reason is a legitimate and non-discriminatory reason for the non-renewal; and (3) Haglund cannot show that the stated reasons are a pretext for age discrimination.   In this regard, the School argues that Haglund cannot rely on evidence that may tend to show that her age was one factor in the non-renewal of her contract; she must show that her age was the "but for" cause of the non-renewal.

Haglund, in response to the School's Motion for Summary Judgment, maintains that the Head of School's comments that employees of the School who could not keep up with technological changes should quit or retire is direct evidence of age discrimination.   She also maintains that the performance issues identified in the letter of May 6, 2011, are not true, and are controverted by the Declarations of several co-workers and parents she has submitted as summary judgment evidence. Finally, Haglund maintains that the School's stated reasons for the non-renewal of her contract are

inconsistent and contradicted in part by the deposition testimony of Dr. Susan Lair, the Head of the School.

## II.    Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party must initially "demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986).  Once the moving party meets its burden,[1] the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists that summary judgment should not be granted."  *Id.*; *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  *Celotex*, 106 S. Ct. at 2548.  Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986).  "If the

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then

summary judgment is proper. *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993)

(citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find

in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule

56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the

better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

   In ruling on a motion for summary judgment, it is only admissible evidence that is to be

considered. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a

motion must be made on personal knowledge, set out facts that would be admissible in evidence, and

show that the affiant or declarant is competent to testify on the matters stated."); *Broadway v. City

of Montgomery, Alabama,* 530 F.2d 657, 661 (5th Cir. 1976) ("Evidence inadmissible at trial cannot

be used to avoid summary judgment."). Here, the School has challenged as inadmissible much of

the evidence submitted by Haglund in response to its Motion for Summary Judgment. That

evidence, and the School's objections thereto, will be considered in context, below.


**III.   Discussion**

   Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any

individual or otherwise discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment  because of such individual's age." 29 U.S.C. § 623(a)(1).

A plaintiff asserting a claim under the ADEA can either offer direct evidence of age discrimination,

or utilize the indirect, circumstantial method of proof first announced in *McDonnell Douglas Corp.

v. Green*, 411 U.S. 792, 802 (1973). Under either method, "the plaintiff has the burden of persuasion

4

to show 'that age was the 'but-for' cause of [her] employer's adverse action." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5ᵗʰ Cir. 2010) (quoting *Gross*, 129 S.Ct. at 177). "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor."  *Gross*, 557 U.S. at 174.   That means that a plaintiff in an ADEA case cannot prevail by showing an employer's "mixed-motive." *Id.* at 176.

### A.    Direct Evidence

 "Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 958 (5th Cir. 1993).  For a statement to suffice as direct evidence of discrimination, the statement must directly suggest the existence of bias and it must not be subject to interpretation as anything other than a reflection of bias.  *See Mooney v. Aramco Svcs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995) (citing *Davis v. Chevron U.S.A. Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)); *see also Maestas v. Apple, Inc.*, No. 12-51282, ___F. App'x ___, 2013 WL 5385478 *5 (5ᵗʰ Cir. Sept. 27, 2013) ("A comment demonstrates an employer's discriminatory intent if it is 'direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'") (quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5ᵗʰ Cir. 2010)).

Workplace comments that are alleged to be direct evidence of discrimination are only considered as such if the comments are: "'1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Jackson*, 602 F.3d at 380 (quoting *Rubinstein v. Adm'rs of Tulane*

5

*Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2000)).   If the alleged workplace comment does not meet these four requirements, the comment cannot be considered direct evidence of discrimination, and is treated as a "stray remark."  *Id.*

Here, Haglund maintains that the comment/statement of Dr. Susan Lair, the Head of the School, that those who could not keep up with new technology should retire or quit is direct evidence of age discrimination.  It is not.  At her deposition, Haglund testified about Dr. Lair's statement as follows:

> Susie mentioned – Dr. Lair mentioned in a meeting one day that the school was going to get into technology more and more and that if we were not able or equipped to keep up with that, that we needed to retire or quit, because we would be doing others, meaning the children, a disservice.
>
> * * *
>
> . . . she said it in a calm voice at one point and later raised her voice and said, "You need to retire, retire, retire.  Quit if you're not ready to do that."

Haglund deposition at pp. 12-13, Exhibit 4 to Defendant's Motion for Summary Judgment (Document No. 25).  Haglund also testified that the comment must have been made during the 2010-2011 school year.  *Id.*

Contrary to Haglund's arguments, such a comment or statement by Dr. Lair is not direct evidence of age discrimination.  The comment was not related to the protected class of persons (over age 40) of which Haglund is a member, the comment was not proximate in time to the decision to not re-new Haglund's contract, and the comment was not related to that decision not to re-new Haglund's contract for the 2011-2012 school year.  The School has submitted summary judgment evidence, which Haglund has not controverted, that Dr. Lair routinely made such statements, in one form or another, at faculty meetings over the years in connection with her explanation of the

School's expectations for the faculty's use of new technology.  *See* Deposition of Susan Lair at pp. 63-69, Exhibit 5 to Defendant's Motion for Summary Judgment (Document No. 26).  The particular statement by Dr. Lair, about which Haglund complains in this case, during a faculty meeting during the 2010-2011 school year, was not made to, or about, Haglund, and was instead directed to the faculty as a whole.  Moreover, the comment was made in connection with the School's expectations of *all* the faculty – those over and under 40 years of age –  and was not in any way connected with the decision to not renew Haglund's contract for the 2011-2012 school year.

As the workplace comment/statement of Dr. Lair does not meet the four criteria to suffice as direct evidence of age discrimination, and because similar references to retirement have been found not to constitute direct evidence of age discrimination, *see e.g., Kilgore v. Brookeland Independent Sch. Dist.*, No. 13-40005, 538 F.App'x 473, 476 (5th Cir. Aug. 8, 2013) ("superintendent's alleged comment that Kilgore was 'eligible for retirement' is not direct evidence from which a reasonable jury could conclude that Brookeland terminated Kilgore because of his age"); *Maestas,* 2013 WL 5385478 * 5 (workplace comments by the plaintiff's supervisor, that "You're 45? Wow, that's old." and "You have been doing this job for a really long time.  Are you sure you still want to do this" were not direct evidence of age discrimination"), Haglund has not provided any direct evidence of age discrimination in this case.[2]  Haglund must therefore rely on the

_____

[2] Haglund maintains, in response to some objections to her summary judgment evidence, that "[t]he evidence contained in the Plaintiff's Declarations support her response that Dr. Lair's ageist comments show direct evidence of Defendant's discriminatory intent."  (Document No. 34 at 9). But, as set forth above, the comments by Dr. Lair about which Haglund complains do not constitute direct evidence of age discrimination.  Moreover, the fact that other employees heard such comments by Dr. Lair, and have provided Declarations to that effect, do not, and cannot, turn Dr. Lair's comments into direct evidence of age discrimination.

indirect, circumstantial evidence method of proving discrimination set forth in *McDonnell Douglas*.

### B.    Circumstantial Evidence

Under the indirect, circumstantial evidence method of proof set forth in *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination.  A *prima facie* case of age discrimination requires proof that the plaintiff: "(1) [ ] was discharged; (2) [ ] was qualified  for the position; (3) [ ] was within the protected class at the time of discharge; and (4) [ ] was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age."  *Jackson*, 602 F.3d at 378.  Once a *prima facie case* has been established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  *See McDonnell Douglas,* 411 U.S. at 802.  If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for discrimination.  *Id.* at 802-803; *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992-993 (5th Cir. 1996).  "A plaintiff may show pretext 'either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"" *Jackson*, 602 F.3d at 378-79 (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) and quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).  A plaintiff can avoid summary judgment if the evidence raises a genuine issue of material fact as to whether the plaintiff was treated less favorably than those outside the protected class (under 40) in nearly identical conditions, or if the evidence raises a genuine issue of material fact as to whether the employer's stated reason for the adverse employment decision was not what actually motivated the employer.  *Moss*, 610 F.3d at 922.  But, "[i]t is insufficient under the ADEA to show that discrimination was a motivating factor; [the plaintiff] must show that age was the 'but-for' cause

of the challenged adverse employment action." *Dees v. United Rentals North America, Inc.*, No. 12-30477, 505 F. App'x 302, 304 (5th Cir. Jan. 2, 2013).   Moreover, where several legitimate, non-discriminatory reasons are given for an adverse employment action, it is the plaintiff's burden under *McDonnell Douglas* to raise a genuine issue of material fact on each stated reason.  *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 351 (5th Cir. 2005) ("a plaintiff relying upon evidence of pretext to create a fact issue on discriminatory intent falters if he fails to produce evidence rebutting all of a defendant's proffered nondiscriminatory reasons"); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) ("The plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates.").

Here, Haglund has established a *prima facie* case of age discrimination.  Her employment contract was not renewed and as a result she was arguably discharged; she was qualified for the teaching position, which was not renewed; she was over the age of 40 at the time her contract was not renewed; and she was replaced by someone younger.  The School does not dispute that Haglund has made out a *prima facie* case, and instead focuses on its detailed, legitimate and non-discriminatory reasons for the non-renewal of Haglund's contract.  Those reasons were set out as follows in a letter from Dr. Lair to Haglund dated May 6, 2011:

> . . . I have made a decision not to renew your employment agreement for the 2011-2012 school year.  The areas of concern that I have identified are as follows:
>
> °   *Not following an engaging approach to literacy* – Children are encouraged to stay together on the same level and are read to more often than appropriate for kindergarten.  Students are required to sit on the carpet and listen to the lesson an inappropriate amount of time.
>
> °   *Parent concerns* – Various concerns from parents regarding your teaching style, class management, lack of individualization/differentiation, and the children spending too much time coloring.  When the parents have asked for

9

an assessment of their child's growth you have been unable to articulate it to them.  In general, Parents are questioning how and what their child is learning.  Too often Parents say Primary II or Bridge were more academic than Kindergarten.

°    *Lack of consistent integration of technology within the classroom* – Students seldom use computers and you seldom use technology.

°    *Lack of classroom management and redirection* – Too often you are unaware of off-task student behavior.  This has been observed inside the classroom and outside the classroom.

°    *Lack of leadership* – It is inappropriate for kindergarteners to vote on whether to have recess.  Parents report that their child often misses recess.  Couple this with the fact that they sit on the floor for sometimes 45 minutes listening to a lesson; the class is not receiving enough physical activity.

°    *Disgruntled new parents* – Kindergarten is one of our school's entry years and unfortunately several of our new parents have become disgruntled with our school because they have experienced these issues in your class.

May 6, 2011, Letter, Exhibit 13-2 to Defendant's Motion for Summary Judgment (Document No. 29 at p. 3).

The reasons set forth in the May 6, 2011, letter are legitimate, non-discriminatory reasons for not renewing Haglund's contract.  *See Kilgore*, 538 F. App'x at 477 ("Performance deficiencies are also a legitimate reason for discharge."); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (the defendant's burden to articulate a legitimate, non-discriminatory reason for the adverse employment action is a burden of production, not persuasion, and involves no credibility assessment).  It is therefore Haglund's burden to show that the School's stated reasons for the non-renewal of her contract are a pretext for age discrimination.   She attempts to do so by: (1) challenging the School's criticism of her performance; (2) disputing the substance of parental complaints about her performance with Declarations of other parents, who supported and appreciated

her teaching style/methods; (3) pointing out Dr. Lair's admission that staffing decisions are not made on the basis of parental complaints; and (4) re-iterating her argument that Dr. Lair's comments about the need to adapt to new technology or retire is some evidence of an age bias on her part.   It is within the context of this effort to raise a genuine issue of material fact on pretext that the School has challenged Haglund's summary judgment evidence.

The School first challenges many of the Declarations provided by Plaintiff as inadmissible due to Plaintiff's failure to disclose, as was required by FED. R. CIV. P. 26(a)(1)(A)(i) and FED. R. CIV. P. 33(b), the identify of those witnesses who provided the Declarations.   The School objects to the Declarations of Julie Thurmond, Debra Charkalis, Cindy Nichols, Lauren Clark, Snyder Patti Cryar, Jessica Brazelton, Kathryn Hachigian, Rise' Johns, David W. Light, M.D., and Molly Montgomery, Exhibits 3, 6, 8, 9, 10, 12, 13, 14, 15 and 16 to Plaintiff's Response to Defendant's Motion for Summary Judgment, respectively, on this basis.   The School then asserts particularized objections to the statements contained in Declarations of Julie Thurmond, Betty Babendure, Debra Charkalis, Lucretia Shaver, Cindy Nichols, Lauren Snyder Clark, Patti Cryar, Jessica Brazelton, Kathryn Hachigian, Rise' Jones, David W. Light, MD, and Molly Montgomery, and objects to the changes made by Plaintiff to her deposition testimony at page 31, line 1.

### A.    Evidentiary Rulings

### 1.    Lack of Pretrial Disclosure

The School asserts, and Haglund does not deny, that Julie Thurmond, Debra Charkalis, Cindy Nichols, Lauren Clark Snyder, Patti Cryar, Jessica Brazelton, Kathryn Hachigian, Rise' Johns, David W. Light, M.D., and Molly Montgomery were not disclosed under Rule 26(a)(1)(A)(i) as individuals likely to have discoverable information, and were not identified in response to the School's

Interrogatory No. 2, which asked Haglund to "[i]dentify all persons with knowledge of facts relevant to the claims in this lawsuit, without regard to whether the person has personal knowledge or whether the knowledge is admissible." The School maintains that Haglund's failure to disclose the identity of these witnesses justifies the exclusion of their Declarations under Fed. R. Civ. P. 37(c)(a). Haglund, in response, argues that the Declarations should be allowed because her failure to identify the Declarants was harmless.

Rule 37(c)(1) provides as follows for the exclusion of witnesses who are not properly identified:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Here, despite Haglund's failure to identify Lauren Clark Snyder, Patti Cryar, Jessica Brazelton, Kathryn Hachigian, Rise' Johns, David W. Light, M.D., and Molly Montgomery as individuals likely to have discoverable information, those witnesses have only offered Declarations which contain the Declarants' appreciation of Haglund as teacher. Haglund's failure to disclose them is, in the context of the summary judgment evidence and Haglund's burden to raise a genuine issue of material fact on pretext, harmless. As for Haglund's failure to disclose Julie Thurmond, Debra Charkalis, and Cindy Nichols as witnesses, such a failure is more troubling, particularly as those individuals were Haglund's co-workers and colleagues and have definite opinions on how Haglund was treated. However, because many of the statements in the Declarations of Thurmond, Charkalis and Nichols are not admissible, as set forth below, Haglund's failure to disclose them is harmless in this context.

### 2.      Declaration of Julie Thurmond

The School objects to the statements in paragraphs 5 and 6 of Julie Thurmond's Declaration on the basis that the statements have not been shown to be based on personal knowledge, are without foundation, and are conclusory.  Other than the first sentence of paragraph 5, the School's objections to paragraphs 5 and 6 of Thurmond's Declaration[3] are SUSTAINED.

### 3.      Declaration of Betty Babendure

The School objects to the statements in paragraphs 3, 5, 6, and 8 of Betty Babendure's Declaration on the basis that the statements have not been shown to be based on personal knowledge, and objects to the statements in paragraph 6 of Betty Babendure's Declaration on the basis of hearsay.  The School's hearsay objection to the first sentence of paragraph 6 of Babendure's Declaration[4] is SUSTAINED; the School's other objections are OVERRULED.

---

[3] In paragraphs 5 and 6 of her Declaration, Thurmond states:

5.      During a faculty meeting my last year at St. Francis I remember our Head of School, Dr. Susan Lair, saying that the older teachers should consider retiring as the school was going to move forward in the field of technology.  For many of us that were more mature, that comment was very alarming and then lo and behold spring came and Linda's contract was not renewed.  Linda attended all of the classes offered to the staff to further our computer skills.  She worked hard to stay up with the many new technology skills we were asked to incorporate in our classrooms.

6.      During my years at St. Francis, and in the two and a half years since I left I have seen many fine teachers leave for a variety of reasons, some of their own accord and others whose contracts were not renewed.  In my opinion, often it is the more mature teachers whom are encouraged to retire or seek other employment regardless of their work ethic, professionalism, and dedication.

Exhibit 3 to Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 31-3).

[4] In paragraphs 3, 5, 6, and 8 of her Declaration, Babendure states:

### 4.        Declaration of Debra Charkalis

The School objects to the statements in paragraph 2 of Debra Charkalis' Declaration on the basis that the statements have not been shown to be based on personal knowledge, and objects to the statements in paragraph 6 of Charkalis' Declaration on basis that the statements have not been shown to be based on personal knowledge, are inadmissible lay opinions, and are hearsay.  The School's hearsay objections to sentences 4-8 of paragraph 6 of Charkalis' Declaration and the School's personal knowledge, lack of foundation, improper speculation, and improper lay opinion objections

---

3.        Linda was, and is a consummate professional.  She put in many extra hours to make just the right activity, just the right grid, just the right recording/checking device to share with her teammates.  When we were required to take technology courses Linda would review until she had a close to perfect score.

* * *

5.        When we were told at an all school meeting to "learn technology or retire . . . you need to learn how to do this or just retire . . . " she learned.

6.        Linda was told that she would be given an opportunity to show what she could do after being told that her position was in danger.  I rarely saw Ms. Hayes in our pod unless she was guiding a tour of prospective parents.

8.        Linda's quiet, steady demeanor and her patience are astounding.  There were and are wonderful attributes for an educator of young children.

Exhibit 5 to Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 31-5).

to sentence two of paragraph 6 of Charkalis' Declaration[5] are SUSTAINED; the School's other objections are OVERRULED.

     **5.**      **Declaration of Lucretia Shaver**

     The School objects to the statements in paragraph 2 of Lucretia Shaver's Declaration on the basis that the statements have not been shown to be based on personal knowledge, and objects to the statements in paragraphs 9 and 10 of Shaver's Declaration on basis that the statements are

---

[5] In paragraphs 2 and 6 of her Declaration, Charkalis states:

2.     I have known Linda Haglund for five years. Linda has always displayed a high degree of integrity, responsibility, and ambition. She is definitely a seasoned exceptional educator. In addition to her excellent classroom instruction, organization, and nurturing abilities, she has proven her teaching knowledge by always working with a team, sharing ideas and working above and beyond with parents.

* * *

6.     I was prepared to join Linda's kindergarten team before I resigned my teaching position at St. Francis. St. Francis had a very unprofessional, non-regulated process of firing teachers with bias reviews and unfair supervisors. Before I decided to move schools I had a conference to interview for a position on Linda's team. I was interviewed by Nancy Church who told me at the interview Mrs. Susan Lair was concerned about the current kindergarten team because of their age. She stated that because of their age they were not flexible and [able] to move around the class and teach new objectives. She wanted to know if I was strong enough to guide that team of older teachers who were set in their ways. She gave me a very negative view of the current kindergarten team. She said she was glad one of the team was retiring and stated they all needed to retire.

Exhibit 6 to Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 31-6).

speculative and are inadmissible lay opinions.   The School's objections to paragraph 10 of Shaver's

Declaration[6] are SUSTAINED; the School's other objections are OVERRULED.

### 6.      Declaration of Cindy Nichols

The School objects to the statements in paragraphs 2, 3, 4, 5, 7 of Cindy Nichols' Declaration

as conclusory, speculative, and inadmissible law opinions, objects to the statements in paragraphs

4 and 5 as not relevant, and objects to the statements in paragraph 5 as hearsay.   The School's

objections to all but the first sentence of paragraph 4, its objections to sentences 3, 4, 5, 6, and 7 of

paragraph 5, and its objections to sentences 3, 4, 16, 17, 18, 19 and 20 of paragraph 7 of Nichols'

Declaration[7] are SUSTAINED; the School's hearsay objections to sentence 8 of paragraph 5, and

---

[6] In paragraphs 2, 9 and 10 of her Declaration, Shaver states:

2.      My name is Lucretia Shaver.  I was an employee of St. Francis Episcopal School for 39 years.  I have known Linda Haglund since 1984.  During that time, I taught First Grade, Kindergarten, and Primary School summer camp with Linda.  Linda was a very dedicated teacher.  I was also a member of and worked with Linda in several professional organizations.  Linda was always professional in and out of the classroom.

* * *

9.      I am not aware of any concerns of new parents.  I was aware that a mother and grandmother that worked on campus had concerns.  Most of their concerns seemed to revolve around the child not being given special privileges.

10.      Linda Haglund was a loyal, devoted employee for 26 years.  She was not respected or appreciated for her age, dedication, or teaching experience by the administration.  She was made to feel worthless as a person and a teacher.  This is not the way she  should have ended her teaching career at St. Francis Episcopal School.

Exhibit 7 to Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 31-7).

[7] In paragraphs 4, 5 and 7 of her Declaration, Nichols states:

4.      It was such a shock and caused so much upset when it was learned that Linda was not given a contract.  She began to be mistreated by Susan Lair when she fell at the beginning of the school year in 2005.  When she was able to return to work in April 2006, it was evident to many that Susan Lair wanted to get rid of her.  Susan is extremely concerned with appearances and didn't like Linda using a walker or cane.  In Susan's usual manner, she set Linda up to fail, but it didn't work.  Although she was placed in the library shelving books, which would be a strenuous job for anyone, Linda did the job without ever complaining about her placement or how physically difficult this was for her.  She did this because she wanted to go back to teaching in the fall.  There were so many places Linda could have made a positive impact, without having to be so physically trying for her.

5.      Eventually, Linda got a teaching contract for the following year.  This contract was for teaching third grade . . . . upstairs.  Again, Susan Lair tried to make things difficult for Linda but Linda persevered.  Linda's injury or age did not interfere with her job performance and she climbed the stairs, as needed.  From that time forward, Linda was "picked on" by the administration.  In the first twenty-one years Linda worked there, she had nothing but positive feedback and evaluations from the administration.  Things changed after returning to school after the fall.  She was not observed, as she was told she would be, in order for the administration to see what she was actually doing in her classroom.

*  *  *

7.      Linda had a student, that I taught the previous year in Bridge Class.  The computer teacher, was her mother.  She continually harassed Linda, and the administration listened to her inaccurate accusations.  The mother was upset with the curriculum, which Linda had no choice but to use.  The mother said her daughter was digressing and reading so much better at home than Linda gave her credit for.  Linda tried to explain to the mother that reading is more than just being able to regurgitate words.  Her mother didn't want to hear the truth about her daughter.  Linda spoke with me on multiple occasions about that student.  She was concerned about the student.  I confirmed that she was one of the lowest, academically, in my class too.  She was not motivated and was lazy.  Her mother didn't help her at home with what I asked her to help her with.  The student also struggled socially and had difficulty making friends.  Her grandmother was a teacher at St. Francis too.  She constantly babied the student and allowed her to do things other students were not allowed to do. (sit with them at lunch, leave her class during a fire drill to be with her grandmother, etc.).  Both the grandmother and mother expected the student to be treated differently than the other students.  They expected her to be given exceptions because her mother and grandmother worked at St. Francis.  Linda treated all her students equally and was fair.  The administration did not support Linda, or even

17

sentences 5 and 6 of paragraph 7 of Nichols' Declaration are SUSTAINED; the School's other objections are OVERRULED.

### 7.   Declarations of Lauren Snyder Clark, Patti Cryar, Jessica Brazelton, Kathryn Hachigian, Rise' Jones, David W. Light, MD, and Molly Montgomery

The School objects to the Declarations of Lauren Snyder Clark, Patti Cryar, Jessica Brazelton, Kathryn Hachigian, Rise' Jones, David W. Light, MD, Molly Montgomery as all being based on speculation and as containing inadmissible lay opinions, and further objects, on relevance grounds, to the Declarations of Jessica Brazelton, Kathryn Hachigian, Rise' Jones, and Molly Montgomery because such Declarants relate incidents that are remote in time. The School's objections to these Declarations are OVERRULED.

### 8.   Haglund's Deposition Testimony

The School objects to the changes made by Plaintiff Haglund to her deposition at page 31, line 1 on the basis that he change is inconsistent with Haglund's deposition testimony at pages 33-39. The School's objections are OVERRULED.

### B.   Pretext Discussion

Having ruled on the objections to Haglund's summary judgment evidence, it must now be determined whether the remaining, admissible summary judgment evidence raises a genuine issue of material fact on pretext.  In that regard, each basis for challenging the School's legitimate, nondiscriminatory reasons for the non-renewal of her contract will be addressed below.  However,

---

investigate whether or not the accusations were credible.  They chose to side with the mother and grandmother.

Exhibit 8 to Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 31-8).

as set forth above, it is Haglund's burden to raise a genuine issue of material fact on *each* of the School's legitimate, nondiscriminatory reasons for the non-renewal of her contract.  *Machinchick,* 398 F.3d at 351; *Wallace,* 271 F.3d at 220.  Failure to meet that burden justifies summary judgment for the School.

### 1.    Performance issues

Haglund first argues that the performance issues identified by Dr. Lair in the letter dated May 6, 2011, are false, and are a pretext for age discrimination.  In support of this pretext argument, Haglund offers numerous Declarations, including Declarations from her former co-workers (Thurmond, Babendure, Charkalis, Shaver, and Nichols), and Declarations from parents of her former students (Snyder, Cryar, Brazelton, Hachigian, Jones, Light, and Montgomery), all of whom provide opinions as to the value of Haglund's teaching, class management and leadership style, and the Declarations of Babendure, Charkalis, Shaver, and Nichols as to Haglund's experience with and use of classroom technology.  None of the admissible statements in those Declarations raise a genuine issue of material fact as to the following three reasons given by Dr. Lair in the May 6, 2011 letter for the non-renewal of Haglund's contract:

    °     *Not following an engaging approach to literacy* – Children are encouraged to stay together on the same level and are read to more often than appropriate for kindergarten.  Students are required to sit on the carpet and listen to the lesson an inappropriate amount of time.

    °     *Lack of classroom management and redirection* – Too often you are unaware of off-task student behavior.  This has been observed inside the classroom and outside the classroom.

    °     *Lack of leadership* – It is inappropriate for kindergarteners to vote on whether to have recess.  Parents report that their child often misses recess.  Couple this with the fact that they sit on the floor for sometimes 45 minutes listening to a lesson; the class is not receiving enough physical activity.

In particular, while each of the Declarants identified above extol Haglund's commitment to her profession, her professionalism, and her effectiveness as a teacher, none dispute Dr. Lair's assessment that Haglund's literacy approach, her classroom management, and her leadership skills *were not acceptable to the School's administration*.  As for Haglund's familiarity with, and use of technology in the classroom, while Haglund's colleagues, Babendure, Charkalis, and Shaver state that Haglund knew how to use technology and incorporated it on a daily basis into her classroom,[8] Dr. Lair cited Haglund's *"Lack of consistent integration of technology within the classroom –* Students seldom use computers and you seldom use technology."  Thus, while the Declarations of Babendure, Charkalis, and Shaver may show that Haglund could, and did, use technology in the classroom, and may have done so on a daily basis, those Declarations do not evidence that Haglund used technology *consistently*, as noted by Dr. Lair.  Moreover, even if the Declarations of Babendure, Charkalis and Shaver could raise a genuine issue of material fact on the truth of the reason *"Lack of consistent integration of technology within the classroom"* Haglund has not, with any of the other admissible summary judgment evidence in the record, raised a genuine issue of material fact on any

---

[8] In this respect, Babendure stated her Declaration: "When we were required to take technology courses Linda would review until she had a close to perfect score. . . When we were asked to learn how to use the Smart Board during the school year, Linda learned.  She prepared special math grids to explain addends to a particular number which were used on the Smart Board.  She shared these with her teammates." Babendure Declaration at ¶ 3, 4, Exhibit 5 to Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 31-5).  Charkalis stated in her Declaration: "Linda and I shared lessons we could use on the Smart Board and she incorporated technology in her class and on the community computers in the pod."  Charkalis Declaration at ¶ 5, Exhibit 6 to Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 31-6).  Shaver stated, "Linda used technology daily.  Technology was used in all areas of our curriculum.  The students were also allowed to use the computers and Smartboard during center time and when they had finished their independent assignments.  Linda attended all technology training."  Shaver Declaration at ¶ 6, Exhibit 7 to Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 31-7).

of the other legitimate, non-discriminatory bases set forth in Dr. Lair's May 6, 2001, letter, for the non-renewal of her contract. The School is entitled to summary judgment for that reason alone.

### 2.    Parental Complaints

As for Haglund's argument that Dr. Lair's reliance on parental complaints as a basis for not renewing her contract are false, again Haglund has not pointed to any summary judgment evidence that raises a genuine issue of material fact on the following two additional bases for not renewing her contract:

- °    *Parent concerns* – Various concerns from parents regarding your teaching style, class management, lack of individualization/differentiation, and the children spending too much time coloring. When the parents have asked for an assessment of their child's growth you have been unable to articulate it to them. In general, Parents are questioning how and what their child is learning. Too often Parents say Primary II or Bridge were more academic than Kindergarten.

- °    *Disgruntled new parents* – Kindergarten is one of our school's entry years and unfortunately several of our new parents have become disgruntled with our school because they have experienced these issues in your class.

To dispute these bases for the non-renewal of her contract, Haglund relies on the Declarations of her colleagues and the Declarations of the parents of former students, all of whom appreciated her teaching style, and the Declarations of Shaver and Nichols, who challenge the validity of any parental complaints. None of those Declarations address the substance of the parental concerns/disgruntled new parents reasons, set forth above (children spending too much time coloring, inability to articulate an assessment of their child's growth, questions about "how and what their child is learning," prior classes viewed as more academic than Kindergarten). As such, the summary judgment evidence also does not raise a genuine issue of material fact on these two additional reasons for the non-renewal of Haglund's contract.

### 3.     Inconsistent and Contradicted Reasons for Non-Renewal

Haglund next argues that regardless of whether the School received parental complaints, and regardless of whether those parental complaints had any validity, she can raise a genuine issue of material fact on pretext based on the School's inconsistent and contradictory reasons for the non-renewal of her contract.  In this regard, Haglund points first to Dr. Lair's reference to "parent concerns" and "disgruntled new parents" as bases for not renewing Haglund's contract, and then points to Dr. Lair's contradictory deposition testimony that parental complaints are not used to determine whether a teacher's contract should be renewed because parents generally don't know anything about the teaching profession.  The contents of the May 6, 2011 non-renewal letter and the substance of Dr. Lair's deposition testimony do not, however, raise a genuine issue of material fact on the consistency of the reasons given for the non-renewal of Haglund's contract.  In Dr. Lair's May 6, 2011, letter, six legitimate, non-discriminatory bases were set out for the non-renewal of Haglund's contract.  While Dr. Lair did suggest at her deposition that the School does not make staffing decisions based on parental complaints because parents are "not necessarily the best decision maker[s] about what that student is or is not learning" and because parents generally don't know much about teaching, *see* Lair Deposition at pp. 84-87, Exhibit 18 to Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 31-18), the staffing decision in this case was not based solely on parental complaints, but was, instead, based on a of variety of reasons, parent concerns and disgruntled new parents only being two of the stated six reasons.  The reasons stated for the non-renewal of Haglund's contract have therefore not been shown to be inconsistent and/or contradictory.

22

### 4.    Dr. Lair's comments about retirement

In her final argument, Haglund maintains that Dr. Lair's ageist statements, by themselves, are sufficient to raise a genuine issue of material fact on pretext.  Those ageist statements, consisting only of Dr. Lair's comments to the faculty at large that they needed to learn and use technology or retire, cannot, standing alone, raise a genuine issue of material fact for trial. *Paulissen v. MEI Technologies, Inc.*, 942 F.Supp.2d 658, 671 (S.D. Tex. 2013) ("age-related remarks cannot be the only evidence of pretext").  Here, no one disputes that Dr. Lair told the entire faculty of the School that they needed to learn new technology or retire.  In addition, no one disputes that it is generally only older employees who are eligible for retirement.  *See* Lair Deposition at 65-66, Exhibit 18 to Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 31-18).   What the School disputes, and what Haglund has been unable to show or even raise a genuine issue of material fact on, is that her age was the "but for" cause of the decision not to re-new her contract.  The School set forth six bases for its decision not to renew Haglund's contract.  The summary judgment evidence does not raise a genuine issue of material fact on the truth and/or falsity of any of those reasons.  Moreover, to the extent Haglund is arguing that her age may have been "a" motivating factor in the School's decision not to renew her contract, she has not come forth with any summary judgment evidence that it was "the" motivating factor.  As such, and because age discrimination claims under the ADEA cannot be proven by showing an employer's mixed motive, *Gross*, 557 U.S. at 174, the ageist comments about which Haglund complains do not raise a genuine issue of material fact for trial.

**IV.     Conclusion and Order**

      Based on the foregoing, and the conclusions that the admissible summary judgment evidence in the record does not raise a genuine issue of material fact as to whether the School's stated reasons for the non-renewal of Haglund's contract are a pretext for age discrimination and that there is no direct evidence of age discrimination in this case, it is

      ORDERED that Defendant's Motion for Summary Judgment (Document No. 24) is GRANTED and Plaintiff's age discrimination claim under the ADEA is DISMISSED with prejudice.

      Signed at Houston, Texas, this _25th___ day of <u>March</u>, 2014.


_____

Frances H. Stacy
United States Magistrate Judge